## PARR *v.* UNITED STATES.

NO. 320.

Argued March 28, 1956.—Decided June 11, 1956.

*Everett L. Looney* and *Abe Fortas* argued the cause for petitioner. With them on the brief in No. 320 and the motion in No. 202, Misc., were *Thurman Arnold, Marvin K. Collie* and *Thomas E. James.*

*Gray Thoron* argued the cause for the United States. With him on the brief for respondents were *Solicitor General Sobeloff, Acting Assistant Attorney General Rice, Joseph M. Howard* and *Lawrence K. Bailey.*

Opinion of the Court by MR. JUSTICE HARLAN, announced by MR. JUSTICE BURTON.

In November 1954 petitioner was indicted in the Corpus Christi Division of the United States District Court for the Southern District of Texas for willfully attempting to evade federal income taxes by filing false returns for the years 1949, 1950 and 1951.[1] In April 1955 the District Court granted petitioner's motion to transfer the case to the Laredo Division of the Southern District, finding that petitioner, a prominent political figure, could not obtain a fair trial in the Corpus Christi Division because of local prejudice against him.[2] Deeming itself without power to transfer the case elsewhere than Laredo without the defendant's consent,[3] the District Court also found against the Government's claim that it would or

[1] Section 145 (b) of the Internal Revenue Code of 1939, 53 Stat. 62.

[2] Fed. Rules Crim. Proc., 21:

(a) "The court upon motion of the defendant shall transfer the proceeding as to him to another district or division if the court is satisfied that there exists in the district or division where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that district or division."

(c) "When a transfer is ordered the clerk shall transmit to the clerk of the court to which the proceeding is transferred all papers in the proceeding or duplicates thereof and any bail taken, and the prosecution shall continue in that district or division."

[3] Petitioner's motion sought a transfer solely to Laredo. In his brief before the District Court, he stated: "We wish to be clearly understood that if the case is not to be transferred to Laredo we prefer that it remain in Corpus Christi."

might be under "a severe handicap" in trying the petitioner in Laredo.[4]

Shortly thereafter, on May 3, 1955, the Government obtained a new indictment against petitioner in the Austin Division of the Western District of Texas for the same offenses.[5] The next day it moved in the Corpus Christi Division for leave to dismiss the first indictment.[6] This motion was granted over the vigorous opposition of the petitioner, and an order of dismissal was entered.[7]

---

[4] 17 F. R. D. 512, 518–520. This opinion is illuminated by the later remarks of the same judge quoted in n. 7, *infra.*

[5] The Austin indictment differed from the Corpus Christi indictment only in its allegations as to venue. Under 18 U. S. C. § 3237, petitioner was indictable both in the Western District (where his returns were filed) and in the Southern District (where the returns were prepared and forwarded for filing).

[6] Fed. Rules Crim. Proc., 48 (a):

"The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."

[7] The petitioner opposed the motion on the ground that it was an attempt to circumvent the District Court's prior order transferring the case to Laredo. It is clear that the principal purpose of the Government in obtaining the Austin indictment was to avoid a trial in Laredo, which it regarded as "the defendant's seat of political power," and that this purpose was made manifest to District Judge Kennerly who (together with Judge Allred) had acted on petitioner's earlier transfer application. In granting the motion to dismiss, Judge Kennerly stated:

"I reached the conclusion [upon petitioner's earlier motion to transfer the case to Laredo] that the case should not be tried in Corpus Christi, and that defendant's motion for change of venue should be granted.

"In reaching that conclusion, or rather in examining the record, I reached this further conclusion, that I gravely doubted whether in the administration of justice generally, the case should be tried in this district at all. . . .

"But when I came to examine the law, I found that I was without

Petitioner appealed to the Court of Appeals and, on the Government's motion, that court (one judge dissenting) dismissed the appeal upon the ground that the order appealed from was not a final order. 225 F. 2d 329. We granted certiorari, directing that the case be heard both on the merits and on the question of appealability. 350 U. S. 861. Since we conclude that the order in question was not appealable, we do not reach the merits.

1. If the Corpus Christi indictment is viewed in isolation from the Austin indictment, an appeal from its dismissal will not lie because petitioner has not been aggrieved. Only one injured by the judgment sought to be reviewed can appeal, and, regarding the Corpus

---

power to transfer the case outside of the Southern District of Texas. . . . If I had had that authority I would have sent it to Amarillo, or Sherman, or Texarkana, or some of those places as far removed from the scene of the troubles as I could, or as I could find. I would have done that not, as I say, to favor either the defendant or the Government, because I feel that justice in the case would be best administered by transferring the case to one of those places.

"But as stated, I could not do that as I understand the law. I then discovered that I could not transfer the case to any other division of the district except Laredo. . . . [S]o the case was transferred there.

"Now we come to this motion by the Government to dismiss the case because of the fact that a new indictment covering the same matter has been presented in the Western District . . . .

". . . evidently there is some discretion in the Court as to the matter of whether the case should or should not be dismissed.

"In twenty-four years on the bench in this district, I do not recall ever having at any time hesitated to dismiss a case when requested by the Government. That was of course under the old law, and under the present rules [sic]. If I have a discretion under the rules now as to whether this case should or should not be dismissed, I must exercise that discretion and allow it to be dismissed, because I do not think that the defendant, either in the hearing this morning or in this enormous record on the question of change of venue, has shown any reasons why the case should not be dismissed."

Christi proceeding as a separate prosecution, petitioner has not been injured by its termination in his favor. *Lewis* v. *United States*, 216 U. S. 611.[8] So far as petitioner's standing to appeal is concerned, it makes no difference whether the dismissal still leaves him open to further prosecution, or whether, as petitioner contends, it bars his prosecution elsewhere than in Laredo because the transfer order operated to give him a vested right to be tried only there. The testing of the effect of the dismissal order must abide petitioner's trial, and only then, if convicted, will he have been aggrieved. Cf. *Heike* v. *United States,* 217 U. S. 423.[9]

---

[8] It is suggested that the defendant in *Lewis* was held not to be aggrieved only because the statute of limitations prevented his re-indictment. The Court alluded to that circumstance, however, only after holding that the defendant could not be "legally aggrieved" by being released from prosecution under the indictment; the bar of the statute of limitations was noted only in connection with a concluding observation that the case was moot in any event.

[9] To support his claim of aggrievement, petitioner, by way of analogy, relies upon four lower court decisions granting appeals from judgments of nonsuit in civil cases. In three of the cases, however, the defendant was asserting a right to a judgment in his favor on the merits, claimed to have been fully established prior to the nonsuit, and was obviously aggrieved by the loss of that judgment. *Connecticut Fire Ins. Co.* v. *Manning,* 177 F. 893 (C. A. 8th Cir.); *Massachusetts Fire & Marine Ins. Co.* v. *Schmick,* 58 F. 2d 130 (C. A. 8th Cir.); *Iowa-Nebraska L. & P. Co.* v. *Daniels,* 63 F. 2d 322 (C. A. 8th Cir.). In the fourth case, *Cybur Lumber Co.* v. *Erkhart,* 247 F. 284 (C. A. 5th Cir.), the plaintiff took a nonsuit only after a previous verdict in his favor had been reversed on appeal and the case had been remanded for a new trial with directions to direct a verdict for the defendant if the evidence was the same; the defendant claimed a right to a judgment if the plaintiff did not proceed to trial on the remand. In all of the cited cases, therefore, the defendant was asserting a right to a judgment on the basis of the progress of the action prior to the nonsuit—a substantial right going to the merits of the controversy of which he had been deprived

2. If the Corpus Christi and Austin indictments be viewed together as parts of a single prosecution, petitioner fares no better. For then the order dismissing the Corpus Christi indictment would not be a final order. The considerations underlying the historic requirement of "finality" in federal appellate procedure require no elaboration at this late date. See *Cobbledick* v. *United States,* 309 U. S. 323. In general, a "judgment" or "decision" is final for the purpose of appeal only "when it terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined." *St. Louis, I. M. & S. R. Co.* v. *Southern Express Co.,* 108 U. S. 24, 28. This rule applies in criminal as well as civil cases. *Berman* v. *United States,* 302 U. S. 211, 212–213.

It is argued that the order dismissing the Corpus Christi indictment was "final" because it (a) terminated the prosecution under that indictment, and (b) cannot be reviewed otherwise than upon this appeal. We think neither point well taken. "Final judgment in a criminal case means sentence. The sentence is the judgment." *Berman* v. *United States, supra,* at p. 212. And viewing the two indictments together as a single prosecution, the Austin indictment being as it were a superseding indictment, petitioner has not yet been tried, much less convicted and sentenced. The order dismissing the Corpus Christi indictment was but an interlocutory step in this prosecution, and its review must await the conclusion of the "whole matter litigated" between the Government and the petitioner—namely, "the right to convict the

---

by the nonsuit. No such circumstances are present here. Cf. Fed. Rules Crim. Proc., 48 (a): ". . . Such a dismissal may not be filed *during the trial* without the consent of the defendant." (Emphasis added.)

accused of the crime charged in the indictment." *Heike* v. *United States, supra,* at p. 429.

Nor is there substance to the claim that the Corpus Christi dismissal will not be reviewable if petitioner is convicted under the Austin indictment. If petitioner is correct in his contention that the Laredo transfer precluded the Government from proceeding elsewhere, he could not be tried in Austin, and, if petitioner preserves the point, he will certainly be entitled to have the Corpus Christi dismissal reviewed upon an appeal from a judgment of conviction under the Austin indictment. To hold this order "final" at this stage of the prosecution would defeat the long-standing statutory policy against piecemeal appeals.

3. We also find untenable petitioner's secondary contention that, even if not final, the Corpus Christi dismissal falls within the exceptions to the rule of "finality" recognized by this Court in such cases as *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U. S. 541, and *Swift & Company Packers* v. *Compania Columbiana del Caribe,* 339 U. S. 684. In those cases, orders made during the course of a litigation were held appealable because they related to matters outside the stream of the main action and would not be subject to effective review as part of the final judgment in the action. Unlike the orders in those cases, this order was but a "step toward final disposition of the merits of the case" and will "be merged in the final judgment." *Cohen* v. *Beneficial Industrial Loan Corp., supra,* at p. 546. The lack of an appeal now will not "deny effective review of a claim fairly severable from the context of a larger litigious process." *Swift & Company Packers* v. *Compania Columbiana del Caribe, supra,* at p. 689. True, the petitioner will have to hazard a trial under the Austin indictment before he can get a review of whether he should have been tried in Laredo under the Corpus Christi indictment, but "bearing the

discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship." *Cobbledick* v. *United States, supra,* at p. 325.

4. With his petition for certiorari, petitioner also filed a motion, Docket No. 202, Misc., for leave to file an original petition in this Court for writs of mandamus and prohibition to the Southern and Western District Courts, designed to require petitioner's trial in Laredo.[10] Although this application has stood in abeyance pending determination of the questions involved on the writ of certiorari, it is appropriate to dispose of it now, it having been fully argued in the present proceeding.

We think that extraordinary writs should not issue. Such writs may go only in aid of appellate jurisdiction. 28 U. S. C. § 1651. The power to issue them is discretionary and it is sparingly exercised. Rule 30 of the Revised Rules of this Court and the cases cited therein. This is not a case where a court has exceeded or refused to exercise its jurisdiction, see *Roche* v. *Evaporated Milk Assn.,* 319 U. S. 21, 26, nor one where appellate review will be defeated if a writ does not issue, cf. *Maryland* v. *Soper,* 270 U. S. 9, 29–30. Here the most that could be claimed is that the district courts have erred in ruling on matters within their jurisdiction. The extraordinary writs do not reach to such cases; they may not be used

---

[10] Petitioner had also been denied writs of mandamus and prohibition in the Court of Appeals, and the writ of certiorari brought up that ruling as well as the dismissal of the appeal. The prerogative writs sought in the Court of Appeals, however, were designed solely to stay the proceedings in the Western District pending the final disposition of the appeal and not to afford permanent relief. Since the Western District Court subsequently granted the Government's motion for such a stay, that part of the case on certiorari is now moot. Thus it is only petitioner's original application to this Court in No. 202, Misc., that is before us.

to thwart the congressional policy against piecemeal appeals. *Roche* v. *Evaporated Milk Assn., supra,* at p. 30.

We conclude that the Court of Appeals properly dismissed the appeal, and its judgment must be

*Affirmed.*

The motion for leave to file a petition for writs of mandamus and prohibition in No. 202, Misc., is

*Denied.*

MR. CHIEF JUSTICE WARREN, with whom MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS and MR. JUSTICE CLARK join, dissenting.

The petitioner, Parr, was indicted for income tax evasion in the United States District Court at Corpus Christi, Texas. He asked and obtained a transfer of the proceeding to Laredo, Texas, on the ground that he could not obtain a fair and impartial trial in Corpus Christi. The Government was dissatisfied with the transfer but had no right under law to ask that the case be transferred to some other district. In this situation, the Government conceived the idea of having Parr indicted at Austin, Texas, thereafter dismissing the case against him in Laredo. Parr protested on the ground that he had a right to be tried, if at all, in Laredo, the place where the District Court had already determined a fair trial could be obtained. His protest was overruled. Parr then appealed to the Court of Appeals. That court dismissed the appeal on the ground that there was no final appealable judgment under 28 U. S. C. § 1291. The Court today affirms that holding without reaching the merits of the District Court's action in dismissing the indictment. We think the judgment is appealable under § 1291 and

that it was error for the District Court to dismiss the case in Laredo.

The dismissal of the indictment, if valid, was a "final" decision of the Laredo Court in that case. This is true even if a new indictment could be obtained in the Laredo District Court or in some other court. In fact, a new indictment was obtained in the Austin District Court before the Laredo Court dismissed the indictment in this case. But this new indictment made the dismissal of the Laredo indictment against Parr no less "final." For the Laredo case, after dismissal, did not remain "open, unfinished or inconclusive"; nor was the decision dismissing it "tentative, informal or incomplete." *Cohen* v. *Beneficial Loan Corp.*, 337 U. S. 541, 546. There was nothing interlocutory about the dismissal. It was not simply an indecisive step in the course of a case which might ultimately result in conviction of Parr. For if Parr is to be convicted on the charge made in the Laredo indictment, it will have to come from the institution of a new case. The time for Parr to appeal from the dismissal of this case against him in Laredo, if ever, was after its "final" disposition by the judge at Laredo. It would appear to be almost a fantastic interpretation of "finality" to hold otherwise.

The majority contend that, even if the dismissal had the requisite finality, petitioner may not appeal it because he was not aggrieved thereby, relying upon *Lewis* v. *United States,* 216 U. S. 611. But that case should not control here, since no new indictment had been returned against Lewis before or after the dismissal of the indictment he sought to have reviewed, and an applicable statute of limitations barred any further effort to indict him. Here, a new indictment was returned against petitioner before the dismissal. If he had, as we believe he had, a right to be tried in Laredo or not at all, clearly he was aggrieved by the dismissal under the circumstances.

It seems to be intimated, however, that Parr might be able to raise the question somehow after trial at Austin if he should be convicted in the new and different case brought there. This Court can write law to that effect. We do not think it should. We countenance plain harassment if we require Parr to be tried under what may turn out to be an invalid indictment at Austin before he can obtain appellate review of dismissal of the Laredo case. Should this occur, Parr would have been required to undergo two trials, one at Austin and another at Laredo. Section 1291 should not be construed so as to bring about such a result.

We think it was error for the District Court at Laredo to dismiss the case there. Rule 21 of the Federal Rules of Criminal Procedure allows defendants to obtain changes of venue in order to get fair and impartial trial. No rule or statute grants such a privilege to the United States. The Government can and probably frequently does shop around to find a court it deems most favorable to try defendants. Here, the Government selected Corpus Christi as the forum in which to prosecute Parr, although, for the last 20 years preceding, the Government had filed all tax-evasion cases arising in that district in Austin. Here, after the Government's choice for trial was found by the District Court to be unfair to the defendant, and Laredo was found to provide a fair place for trial, the Government is being allowed to frustrate the court's selection of Laredo by filing a new indictment in a new case in Austin. We think the Government should not be allowed to circumvent the court's order in that fashion. Rule 21 (c) provides that, after transfer under that rule, "the prosecution shall continue" in the place to which the case has been transferred. There is no finding of any kind that the Government will not get a fair trial at Laredo. The finding was expressly

to the contrary. The specific purpose of Rule 21 is to have trials that can be fair and impartial. The object of the Government here is to escape from a court where it has been decided after a full hearing that a fair and impartial trial will be given. There is no reason that we can see why Rule 21 should not be given its full effect by requiring trial to take place in the district court to which it has been removed in the interest of fairness. We would reverse this case.