**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 16-1593 & 16-1595

_____

UNITED STATES OF AMERICA

v.

JERMAINE COLEMAN,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 2-13-cr-00356-001 & 2-15-cr-00543-001)
District Judge: Honorable Jan E. DuBois

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 18, 2017

Before: FISHER, HARDIMAN, and GREENAWAY, JR. *Circuit Judges*.

(Opinion Filed:  January 25, 2017)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

In these consolidated appeals, Jermaine Coleman challenges two orders of the District Court related to his federal bank robbery indictments. First, Coleman argues that the District Court erred by dismissing his original indictment without prejudice after the Government violated the Interstate Agreement on Detainers Act. We will dismiss that claim for lack of appellate jurisdiction. Second, Coleman appeals the District Court's order denying his motion to dismiss his second indictment on double jeopardy grounds. On that claim, we will affirm the order of the District Court.

I

On March 19, 2013, Coleman was arrested by Pennsylvania law enforcement on bank robbery charges and parole violations. Coleman's parole was revoked, he was recommitted to state custody for six months, and was to be detained pending disposition of the bank robbery charges.

While Coleman was in state custody, federal authorities adopted the bank robbery case for prosecution. Coleman was indicted by a federal grand jury on July 11, 2013, and a United States Magistrate Judge issued a warrant for his arrest. On July 17, 2013, the FBI faxed a copy of the arrest warrant to the state facility as a detainer against Coleman, and a week later the FBI took custody of him pursuant to a writ of habeas corpus *ad prosequendum*. On August 21, 2014, nearly a year after he was taken into federal custody, Coleman pleaded guilty to three counts of bank robbery as charged in the indictment.

After the plea hearing, Coleman was returned to federal custody at the Federal

Detention Center (FDC) in Philadelphia to await sentencing. Due to overcrowding,

Coleman was transferred on February 26, 2015 from the FDC to George W. Hill Prison, a

Pennsylvania state facility that contracts to house federal prisoners. When Coleman

arrived at George W. Hill, he was mistakenly identified as a state prisoner. Coleman

alerted prison officials that he belonged in the federal wing, but they responded that

"[t]here is nothing in our records that indicates you belong in federal custody or that you

have a federal case." App. 134. The state officials then transferred Coleman to the State

Correctional Institution at Graterford on March 31, 2015 to meet with the Parole Board

pursuant to the May 8, 2013 state detainer. Coleman remained at Graterford until April

22, 2015, when the District Court issued a writ of habeas corpus ordering Coleman to be

returned to federal custody.

After he was returned to the FDC in Philadelphia, Coleman filed a motion to

dismiss the indictment against him for violation of the Interstate Agreement on Detainers

Act (IADA). Specifically, Coleman invoked the IADA's "anti-shuttling" provisions,

which apply when a prisoner is sent from one state (the sending state) to another state

(the receiving state) pursuant to a detainer. If that prisoner is returned to the sending state

before "trial is had" for the charges described in the receiving state's detainer, then "the

court shall enter an order dismissing" those charges. 18 U.S.C. app. 2 § 2, art. IV(e).

Courts typically dismiss such cases with prejudice. *Id*. But if the United States is the

offending receiving sovereign, then the charges can be dismissed with or without prejudice after certain enumerated statutory factors are considered. *Id.* § 9(1).

On November 5, 2015, the District Court entered an order dismissing Coleman's bank robbery indictment without prejudice. The Court noted that Coleman was in United States custody pursuant to the July 17, 2013 detainer based on the untried bank robbery indictment. It concluded that an IADA "violation . . . occurred when Coleman was erroneously transferred back to state custody on February 26, 2015, prior to his sentencing." App. 144. After applying the factors listed in 18 U.S.C. app. 2 § 9(1), the Court dismissed the indictment without prejudice.

On November 17, 2015, a federal grand jury re-indicted Coleman on the same three counts of bank robbery. Coleman filed a pro se motion to dismiss the indictment, claiming it violated the Double Jeopardy Clause. On March 3, 2016, the District Court denied the motion to dismiss. Coleman appealed.

II

Coleman first claims the District Court should have dismissed his indictment with prejudice following the IADA violation.[1] We lack jurisdiction to address this claim because the law is well settled that a district court order dismissing an indictment without prejudice is not a final order. *See Parr v. United States*, 351 U.S. 513, 518 (1956). Indeed, we have observed that "[e]very court of appeals that has considered the appealability of an order dismissing an indictment without prejudice has held such an

---

[1]The District Court had subject-matter jurisdiction pursuant to 18 U.S.C. § 3231.

order is not final and appealable under § 1291." *United States v. Kuper*, 522 F.3d 302, 303–04 (3d Cir. 2008) (listing cases). Furthermore, because an order dismissing the indictment without prejudice is reviewable on appeal following a subsequent conviction, it is not an appealable collateral order. *See Parr*, 351 U.S. at 519–20.

Coleman also challenges the District Court's order denying his motion to dismiss the second indictment on double jeopardy grounds. We have jurisdiction to adjudicate this claim because "[p]retrial orders denying motions to dismiss an indictment on double jeopardy grounds are within the 'collateral order' exception to the final order requirement." *United States v. Smith*, 82 F.3d 1261, 1265 (3d Cir. 1996). Our review of double jeopardy challenges is plenary. *Id.* According to Coleman, the District Court's dismissal of the original indictment for IADA violations was the equivalent of an acquittal. We disagree.

The Supreme Court has long recognized that "a verdict of acquittal could not be reviewed, on error or otherwise, without putting a defendant twice in jeopardy, and thereby violating the Constitution." *Evans v. Michigan*, 133 S. Ct. 1069, 1074 (2013) (alterations omitted) (quoting *United States v. Ball*, 163 U.S. 662, 671 (1896)). For double jeopardy purposes, an acquittal "encompass[es] any ruling that the prosecution's proof is insufficient." *Id.* at 1074–75. Acquittals "stand apart from procedural rulings that may also terminate a case," following which the Government may retry the case without violating the Double Jeopardy Clause. *Id.* at 1075. "Procedural dismissals include rulings on questions that 'are unrelated to factual guilt or innocence,' . . . including 'a legal

5

judgment that a defendant, although criminally culpable, may not be punished' because of some problem like an error with the indictment." *Id.* (quoting *United States v. Scott*, 437 U.S. 82, 98 & n.11 (1978)).

The District Court's order dismissing Coleman's original indictment was not an acquittal. Its ruling did not hint that "the prosecution's proof is insufficient," *id.* at 1075, and did not discuss the merits of the prosecution's bank robbery case. Rather, the ruling was procedural because it was "not related to factual guilt or innocence." *Scott*, 437 U.S. at 92. As we have noted previously, an IADA violation has "little [to] no bearing on the prisoner's guilt or innocence." *United States v. Williams*, 615 F.2d 585, 590 (3d Cir. 1980). Coleman's first argument on this issue fails accordingly.

Coleman next claims that any attempt to retry him would be unconstitutional because the District Court dismissed the original indictment after it accepted his guilty plea. He is incorrect. "It has long been settled . . . that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38 (1998). And in the plea-bargain context, we have held that "where a defendant by his own motion causes the withdrawal of his guilty plea, he has waived his right not to be put in jeopardy a second time." *United States v. Jerry*, 487 F.2d 600, 606 (3d Cir. 1978). Therefore, the Government was not

6

prohibited from re-indicting Coleman after he succeeded in getting his original indictment set aside for the IADA violation.

Coleman attempts to distinguish his appeal from the cases just cited by noting that they involve "error *in the proceedings leading up to conviction*," whereas his case involves a procedural error that occurred *after* his guilty plea had been accepted. Reply Br. 8. This is a distinction without a difference. Those cases make clear that what matters is not when the error occurred, but rather what kind of error was committed. Specifically, retrial is prohibited only where the error was the functional equivalent of an acquittal, rather than some procedural error unrelated to guilt. *See Evans*, 133 S. Ct. at 1075. Indeed, the Supreme Court has explained that retrial following procedural reversal is "necessary in order to ensure the 'sound administration of justice'" and to vindicate the "societal interest in punishing one whose guilt is clear." *Lockhart*, 488 U.S. at 38 (quoting *United States v. Tateo*, 377 U.S. 463, 466 (1964)).

Finally, Coleman contends the District Court abused its discretion by not holding oral argument on this motion. However, under Eastern District of Pennsylvania local rules, oral argument on a pre-trial motion is discretionary. E.D. Pa. Local R. Crim. P. 12.1 (explaining that a hearing may be held, "[i]f the Court determines that oral argument is necessary"). In fact, Coleman's double jeopardy motion was particularly suited for submission without argument because, as he concedes, "it was a question of law not one of evidence." Reply Br. 8; *cf. United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996) (explaining that the district court is required to hold evidentiary hearing only when there

7

are "*issues of fact* material to the resolution of the defendant's . . . claim" (emphasis added)). Likewise, the District Court noted in its memorandum opinion that the "case presents a narrow question" and that "the facts . . . are not in dispute." App. 297. And the record belies Coleman's claim that the District Court ruled "without giving him the opportunity to fully put his position on the record." Coleman Br. 30. To the contrary, Coleman discussed the merits of the motion in detail at an ex parte hearing, filed a motion explaining his position, and filed a memorandum responding to the Government's position.

*    *    *

For the reasons stated, we will affirm the District Court's judgment.