**COMMONWEALTH OF the NORTHERN MARIANA ISLANDS, Plaintiff–Appellee,**

v.

**William C. CAMPBELL, II, Defendant–Appellant.**

No. 93–16669.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 31, 1994 *.

Decided Dec. 6, 1994.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

William C. Campbell, II, in pro per.

Charles R. Rotbart, Asst. Atty. Gen., Saipan, CM, for plaintiff-appellee.

Before: BROWNING, TROTT and KLEINFELD, Circuit Judges.

Opinion by Judge KLEINFELD; Dissent by Judge TROTT.

KLEINFELD, Circuit Judge:

This case involves issues of our appellate jurisdiction over cases from the Supreme Court of the Commonwealth of the Northern Mariana Islands.

## Facts

Campbell was prosecuted on a citation for drunk driving. Police had come to arrest a man named Isla. According to Campbell, the two police officers who arrested Isla asked Campbell to follow them in his car, so that he could drive another witness back home. A third officer pulled Campbell over and cited him.

His lawyer promptly requested the names of the two officers who arrested Isla, and the Isla police report. The prosecutor refused throughout the pretrial period to make these disclosures. The superior court had ordered the prosecution "to provide discovery" which "shall, at a minimum, include the evidence that the prosecution intends to present in its case-in-chief at trial."

Shortly before trial, Campbell moved that the government "be precluded from offering any evidence or testimony concerning the manner in which Mr. Campbell was driving as well as his demeanor." The ground was the government's refusal to accede to the discovery demands. The defense theory was that the evidence was exculpatory, so it had to be produced without order under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and also that the court's order and rules required disclosure.

The superior court heard the motion on the morning of the day trial was to start. At the hearing, the prosecutor brought the two officers to court, and offered to let defense counsel talk to them. She said that she would give the judge the Isla police report to review *in camera* to see if it contained discoverable material.

The court granted the defense motion *in limine*. Then, because the case could not be tried without the excluded evidence, he dismissed the case without prejudice.

The government appealed. It argued that *Brady* would have been satisfied by *in camera* inspection, and dismissal was inappropriate.

The Commonwealth Supreme Court vacated the dismissal and remanded. *Commonwealth of the Northern Mariana Islands v. Campbell*, 1993 WL 614809 (N. Mariana Islands 1993) (No. 90–012, 92–0070). It held that the superior court "should have fashioned a remedy short of dismissing the case." The two officers' observations of Campbell were material, but the record did not establish whether they were exculpatory. A written motion should have been presented to the superior court, and the court should have inspected the Isla police report *in camera* to see if it contained material which would be exculpatory for Campbell. A hearing or a short continuance, it ruled, would have enabled Campbell to interview the two officers and review the report.

Campbell appeals.

## Analysis

1. Our Jurisdiction.

▮ The Commonwealth argues that we lack jurisdiction because this case involves only local law. The Commonwealth correctly argues that we have no jurisdiction over appeals from the Commonwealth Supreme Court "based solely on principles of local law." *Sablan v. Manglona*, 938 F.2d 970, 971 (9th Cir.1991). However, we do have jurisdiction over appeals from the Commonwealth Supreme Court "in all cases involving the Constitution, treaties, or laws of the United States." 48 U.S.C. § 1694c. This appeal included a *Brady* issue, which involves the Due Process Clause of the Fourteenth Amendment. *Brady v. Maryland*, 373 U.S. 83, 86, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). Therefore, we have jurisdiction over this appeal.

Our dissenting colleague points out, and we agree, that it is too early to say whether Campbell was deprived of his constitutional right under *Brady* to disclosure on request of exculpatory information. We intimate no determination that he was. The statute confers jurisdiction on us "in all cases *involving* the Constitution." Campbell argues that the Commonwealth Supreme Court decision errs in its interpretation of his *Brady* due process right. His appeal, therefore, is one "involving" the Constitution. We do not have to adjudicate the merits of his constitutional claim, and decide that he is right, in order to have jurisdiction.

2. Commonwealth Supreme Court Jurisdiction.

Campbell argues that the Commonwealth Supreme Court lacked jurisdiction, because the dismissal without prejudice was not a final order. The Commonwealth may appeal to the Supreme Court "from a decision, judgment or order of the Superior Court dismissing an information." 6 Comm.Mar.Code § 8101. Campbell does not argue, so we do not decide, whether a citation is an "information" for purposes of this statute. Rather, he argues that a dismissal must be with prejudice to have the requisite finality for appeal.

▮ The interpretation of the CNMI statute is a matter of local law. We may examine the Commonwealth Supreme Court's interpretation of Commonwealth law only if

that interpretation is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation." *Ferreira v. Borja,* 1 F.3d 960, 962 (9th Cir.1993) (internal quotations omitted).

■ There is authority on Campbell's side of the argument. *United States v. Martin,* 682 F.2d 506, 507 (5th Cir.1982) (finality only with imposition of sentence). But authority also amply supports the jurisdiction which the Commonwealth Supreme Court exercised. *See United States v. Adrian,* 978 F.2d 486, 493 (9th Cir.1992) (setting out standard of review for dismissal of an indictment without prejudice); 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3919.6 (2nd ed. 1992) (discussing pre-jeopardy dismissals). The Commonwealth Supreme Court's exercise of jurisdiction was not "untenable." We therefore may not review it.

### 3. The *Brady* Issue.

■ Campbell argues that the two officers' identities and prior accounts must be exculpatory, because they would not have allowed him to drive behind them to the police station if he was drunk. This is plausible, but not certain. For all we know, they wrote in the Isla report that Campbell was drunk, and that he drove in violation of their suggestion to the contrary.

The identities of the two officers were disclosed, and they were made available for a defense interview, so that part of the discovery issue dropped out of the case.

*Brady* requires disclosure of exculpatory material "upon request," *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196, so if the Commonwealth Supreme Court opinion were read, as Campbell intimates, to require a defense motion and order to compel before disclosure of exculpatory evidence, that would be an untenable application of local law. But we do not read the Supreme Court decision that way. Insofar as the discovery request involved local discovery requirements, not potentially exculpatory evidence, the requirement that the defendant must seek an order to compel disclosure is not an "untenable"

application of local law. *Ferreira,* 1 F.3d at 962.

The difficulty here was that the defense did not make it clear that its request was based on the exculpatory nature of the evidence, rather than its materiality and discoverability under local law. The prosecution did not concede that the evidence was exculpatory, and until a court examines the material, it cannot be said whether the prosecutor's refusal to disclose was in good faith. In these circumstances, no constitutional violation can be found. The requirement of an *in camera* inspection of the contested materials, and consideration by the judge of other remedies, such as continuance, were not unconstitutional interpretations of how *Brady* should be applied in these circumstances. *Cf. Giglio v. United States,* 405 U.S. 150, 152–55, 92 S.Ct. 763, 765–66, 31 L.Ed.2d 104 (1972) (focusing on the actual content of the allegedly exculpatory testimony to determine whether *Brady* had been violated); *United States v. Gardner,* 611 F.2d 770, 774 (9th Cir.1980) (setting out test for materiality where a general request for exculpatory evidence is made).

AFFIRMED.

TROTT, Circuit Judge, Dissenting:

I have no quarrel with the result reached by my colleagues, but I would have dismissed the appeal for lack of jurisdiction. In my judgment, we have no Constitutional claim before us that has attained the ripeness required for adjudication. Neither the trial court nor the Supreme Court of the CNMI has inflicted *any* Constitutional damage on Mr. Campbell, none. The trial court ruled in his favor. The appeal from that ruling was not taken by Campbell but by the government. The Supreme Court simply said to the trial court, "You must look at the evidence to see if it is exculpatory or material before you dismiss the case." There is not a scintilla of evidence in this record at this point showing a *Brady* violation has occurred. The prosecution claims the disputed evidence is not exculpatory. No judge has ever reviewed the evidence to see if the *Brady* claim has any merit.

The dismissal was for a violation of a discovery order, not for failure to provide *Brady* material to the defense. *Brady* is at best in the starting gate, *not* on the track. All we end up reviewing is the equivalent of an interlocutory decree from the CNMI Supreme Court telling a trial judge he must examine disputed evidence before he uses its nonproduction during discovery as a reason to dismiss a case without prejudice, period. Now, the judge who prematurely dismissed the case will have to see if the evidence implicates *Brady*.

Such a decree simply does not involve the Constitution, the treaties, or the law of the United States in the manner required for us to exercise appellate jurisdiction. The proof of this pudding is found in Judge Kleinfeld's opinion: "[N]o constitutional violation can [yet] be found." With great respect for my able colleagues, I believe they have been sidetracked by an inchoate issue not sufficiently ripe to justify our intrusion.

Because our jurisdiction does not attach until such a showing is made, we are at best premature in hearing this case. Under these circumstances, we commit the serious error of arrogating power belonging exclusively to the Supreme Court of the Northern Mariana Islands and to the people to whom that court ultimately answers. By permitting this appeal, we undercut and denigrate the authority of that tribunal by injecting ourselves in an unresolved matter in which we do not yet belong.

My concern is not so much this case—the damage has been done—but the next case where the majority's opinion will encourage similar appeals where none should lie. Such appeals will only prolong cases unnecessarily and thus interfere with an orderly and expeditious system of justice in the CNMI. To prove my point, I only need publish the date of the arrest, January 4, 1992, and the length of the time it has taken to process this federal appeal: eighteen months.